[Crim. No. 1300. In Bank.—November 29, 1907.]

## THE PEOPLE, Respondent, v. WILLIAM KAUFFMAN, Appellant.

CRIMINAL LAW—CONSPIRACY.—Where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance of any prosecution of the common design for which they combine.

ID.—LIABILITY OF CONSPIRATOR FOR INCIDENTAL ACT.—Each conspirator is responsible for everything done by his confederates which follows incidentally in the execution of the common design as one of its probable and natural consequences, even though it was not intended as a part of the original design or common plan. The act, however, must be the ordinary and probable effect of the wrongful act specifically agreed upon, so that the connection between them may be reasonably apparent, and not a fresh and independent product of the mind of one of the confederates outside of, or foreign to, the common design.

ID.—ACTS FOR WHICH CONSPIRATOR IS NOT RESPONSIBLE. — Even if the common design is unlawful, and if one member of the party departs from the original design as agreed upon by all of the members, and does an act which was not only not contemplated by those who entered into the common design but was not in furtherance thereof, and not the natural or legitimate consequence of anything connected therewith, the person guilty of such act, if it was itself unlawful, would alone be responsible therefor.

ID.—COMMON DESIGN—QUESTION FOR JURY.—Whether or not the act committed by one of the conspirators was the ordinary and probable effect of the common design, or whether it was a fresh and independent product of the mind of the one committing it, outside of, or

foreign to, the common design, is a question of fact for the jury, and if there be any evidence to support its finding on this question its determination is conclusive.

ID.—CONSPIRACY TO COMMIT BURGLARY—RESIST OF ARREST—KILLING OF POLICEMAN—EVIDENCE.—Where six persons enter into a conspiracy to burglarize a particular place, but desist from their ultimate purpose upon finding the place guarded, and on returning therefrom, and while resisting arrest, one of them shoots and kills a policeman, the facts that five of the conspirators were armed and the other had endeavored to secure a pistol before starting on .the journey, that several of them had burglars' tools on their persons, and that on their return they divided into two parties in order to escape suspicion, are sufficient to warrant the jury in finding that the conspiracy embraced the purpose of resisting arrest in going to and in returning from the scene of the proposed burglary, even to the extent of taking human life.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing a new trial. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

William H. Schooler, for Appellant.

U. S. Webb, Attorney General, and Lewis F. Byington, District Attorney, for Respondent.

SLOSS, J.—William Kauffman, Frank Woods, William Henderson, John Courtney, William B. Kennedy, and Allan Goucher were by indictment jointly charged with the murder of one Eugene C. Robinson. Upon a separate trial Kauffman was convicted of murder in the second degree, and he now appeals from the order denying his motion for a new trial.

His principal contention is that the evidence was insufficient to justify the verdict of guilty. There was evidence tending to establish this state of facts: In January, 1902, the defendant William Kauffman rented rooms at 203 Turk Street in the city and county of San Francisco. These rooms were occupied by Kauffman, Henderson, and Goucher, who, together with Woods, Courtney, and Kennedy, devised a plan to rob the safe at Cypress Lawn Cemetery in San Mateo County. Having provided themselves with burglars' tools, nitro-glycerin and fuse for the purpose of breaking into the safe, they started

on the night of the 20th of January, 1902, for Cypress Lawn. Before starting, each of the six, with the exception of Kauffman, had armed himself with a revolver. Kauffman had no revolver, but had on his person a small drill, and a bottle of nitro-glycerin which he had made. In going to the cemetery the party divided into squads of three for the purpose, it may reasonably be inferred, of lessening the danger of detection. Upon arriving at the cemetery they found an armed man upon the premises and decided to return to San Francisco. They rode back on a street-car until they reached the corner of Mission and Twenty-ninth streets, where they found that the car went no further. Thence they started to walk into the city, proceeding along Valencia Street, here again dividing into two parties of three each, Woods, Henderson, and Kauffman going ahead, and Kennedy, Goucher, and Courtney following at some little distance. After they had gone along in this way for some distance, Woods, Henderson, and Kauffman were called back by the others, who suggested the burglary of a coal yard. This proposition was objected to by the appellant and others and was not carried out. Woods, Kauffman, and Henderson continued walking in advance of the others. Walking along Valencia Street they had reached Seventeenth Street, when they heard a call or yell and saw Kennedy and Goucher running towards them. Kennedy turned and fired a shot back and then climbed or jumped over a fence and disappeared. Goucher joined the three in advance, saying that he was not going to run, and added something about having a gun. The four had walked a short distance when Robinson, a police officer, came running up behind them and asked, ''Who has got that gun?'' Woods ordered him to throw up his hands. Two or three shots were exchanged, probably between Woods and Robinson, and then a fusilade of shots followed, in the course of which both Woods and Robinson were wounded. This encounter occurred at about one o'clock on the morning of January 21, and Robinson died on the same day as the result of the wounds so received by him. After the shooting, the appellant and his co-defendants fled, and all, with the exception of Henderson, made their escape from the scene. Woods and Kauffman started a day or two later for Portland, Oregon, whence Kauffman made his way east until he reached Fort Williams, Canada, where he was arrested.

At the time that Goucher came up and joined Woods, Henderson, and Kauffman, Kauffman still had in his possession the nitro-glycerin and the drill with which he had started. When Goucher came up, Kauffman handed him the nitro-glycerin, but still kept the drill. As has been said the appellant was not armed, and during the shooting was standing still, his own testimony being to the effect that he held his hands up in the air.

The theory of the people was that the killing of Robinson was an act committed in furtherance of a common design or conspiracy by the six defendants to commit an unlawful act, and that therefore Kauffman, as one of said conspirators, was criminally responsible for such killing, although he took no active part in the attack upon Robinson.

There is no dispute about the rules of law governing the criminal liability of each of several parties engaging in an unlawful conspiracy or combination. An apt statement of them, abundantly supported by authority, is to be found in 8 Cyc. 641, in the following language: ''The general rule is well settled that where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance of any prosecution of the common design for which they combine. In contemplation of law the act of one is the act of all. Each is responsible for everything done by his confederates, which follows incidentally in the execution of the common design as one of its probable and natural consequences, even though it was not intended as a part of the original design or common plan. Nevertheless the act must be the ordinary and probable effect of the wrongful act specifically agreed on, so that the connection between them may be reasonably apparent, and not a fresh and independent product of the mind of one of the confederates outside of, or foreign to, the common design. Even if the common design is unlawful, and if one member of the party departs from the original design as agreed upon by all of the members, and does an act which was not only not contemplated by those who entered into the common purpose, but was not in furtherance thereof, and not the natural or legitimate consequence of anything connected therewith, the person guilty of such act, if it was itself unlawful, would alone be responsible therefor.''

The contention of the appellant is that the unlawful combination or conspiracy embraced only the proposed burglary at the cemetery, and that when this project was abandoned by reason of the discovery of an armed guard on the premises, the conspiracy or common design was at an end, and that anything done thereafter was the individual act of the party doing it. If, as matter of law, it can be said that the criminal combination embraced no more than this contemplated burglary, and that the shooting of Robinson was not within the reasonable and probable consequences of the common unlawful design, it would follow that no case was made out against the appellant. But whether or not the act committed was the ordinary and probable effect of the common design or whether it was a fresh and independent product of the mind of one of the conspirators, outside of, or foreign to, the common design, is a question of fact for the jury, (*Bowers* v. *State,* 24 Tex. App. 542, [5 Am. St. Rep. 901, 7 S. W. 247]; *Spies* v. *People,* 122 Ill. 1, 642, [3 Am. St. Rep. 320, 12 N. E. 865, 17 N. E. 898]), and if there be any evidence to support the finding of the jury on this question, its determination is conclusive. In this case the people contended that the evidence justified the jury in finding that the common plan or design in which Kauffman and his co-defendants had engaged included not only the breaking into the safe but also the protection of themselves and each other from arrest and detection while going to and coming from the scene of the proposed burglary, and that any act committed by any of them in the course of such going or coming for the purpose of resisting arrest and preventing consequent detection might be found to be within the scope of the common design or plan. Treating the extent of the conspiracy as a question of fact, the trial court submitted the question to the jury, giving them the following instruction:—

"If you find from the evidence in this case that the defendant and others entered into a conspiracy to commit a burglary and that in connection with such a criminal purpose they had agreed to resist arrest and interference going to the scene of the proposed crime and returning therefrom and that being confederated together for the felonious purpose of such burglary and resistance to the civil power of the state—even to the extent of taking human life—and that in furtherance of such

a conspiracy one of the conspirators killed officer Eugene C. Robinson, then it will be your duty to convict the defendant of the crime of murder because the law holds that all who entered into such a conspiracy assumed to themselves as a body the attribute of individuality, rendering whatever was done by one of the conspirators in furtherance of that design the act of all."

Was there evidence justifying the jury in finding that the conspiracy extended to the extent indicated in this instruction? This court has in effect answered this question in the affirmative in *People* v. *Woods,* 147 Cal. 265, [109 Am. St. Rep. 151, 81 Pac. 652]. That was the appeal of Woods, one of the defendants jointly charged with Kauffman, from a judgment upon a conviction of murder of the first degree. The evidence, which is set forth with some fullness in the opinion of the chief justice, was substantially the same as that presented in this case. In the opinion in the Woods case it is said (page 271): "The court was not only justified in overruling the objections to the testimony regarding the conspiracy upon the ground above set forth, but upon the further ground that upon the evidence—circumstantial and direct— the jury would have been justified in concluding that a part of the common design was to resist arrest by the use of the pistols with which the defendants armed themselves. (*People* v. *Pool,* 27 Cal. 572.) Pistols are not used for breaking into a safe; their purpose is to kill those who interfere to prevent a burglary or arrest the perpetrators."

It is argued that the decision in the Woods case is not applicable to the facts here presented, because in that case it appeared that Woods himself had fired upon Robinson and had inflicted the fatal wound. But the court was considering the admissibility of testimony regarding acts of parties other than Woods. This testimony was admissible only upon the theory that these parties and Woods were co-conspirators, and in holding that the evidence was properly introduced, it was material to the decision to hold that upon the evidence the alleged conspiracy might have been found by the jury not to have terminated. If such conspiracy was still existent at the time of the shooting, the result that Kauffman was responsible for acts done by any of the conspirators follows as truly as did the conclusion that evidence of the acts of co-conspirators was admissible against Woods.

But if we were to regard the question as a new one, we have no doubt of the correctness of the views expressed in the former case. The jury was certainly justified in believing that the division of the band into two parties of three was decided upon on the homeward as on the outward journey for the purpose of lessening suspicion, and that to all intents and purposes the six were going home together. Five of them were armed with deadly weapons, and several of them—Kauffman among others—had on their persons burglars' tools. For their own protection against the consequences of their felonious enterprise it was necessary that these tools should not be discovered upon them by any officer of the law. Adding to this the consideration suggested by the court in *People* v. *Woods,* namely, that pistols are used by burglars not for breaking into safes but for preventing interference with the criminal design or arrest by those who may discover its existence, and the further fact that there is evidence here to the effect that Kauffman himself had endeavored to secure a pistol before starting on the journey, we think it clear that there was ample evidence to justify the jury in finding that the common design or conspiracy embraced not only the actual burglary at Cypress Lawn Cemetery, but the protection of the party from arrest or interference on their way to and from the scene of the proposed crime.

This appeal was originally heard in the district court of appeal for the first appellate district, and there a reversal was ordered on the ground of insufficiency of evidence. Upon petition of the people the cause was ordered transferred to this court for hearing and determination. It appears that all of the briefs filed in the district court of appeal were destroyed in the fire of April, 1906, and with the exception of a brief filed by the appellant since the submission here, we have before us nothing but the petition of the attorney-general asking for the transfer of the cause and the reply of the appellant thereto. These papers deal only with the point decided in the appellate court and contain no argument on behalf of the appellant with reference to other points that may be relied upon by him. We have, however, carefully examined the transcript and find in it no prejudicial error. The instructions given by the court were full and contained an accurate definition of the law applicable to the case. Instructions

CLII Cal.—22

requested by the defendant and refused were for the most part based upon the theory that as matter of law the alleged conspiracy must be held to have terminated when the conspirators abandoned the plan of breaking into the safe at Cypress Lawn Cemetery. As we have already said, the question whether or not the conspiracy had then terminated was one of fact for the jury. Many objections to testimony were based upon the same untenable theory, and the others were equally without merit.

There is nothing in the point, suggested in the last brief filed, that the verdict is based upon the uncorroborated testimony of an accomplice. Apart from the testimony of Henderson, there was sufficient evidence of every material element of the crime. (See *People* v. *Woods,* 147 Cal. 265, [109 Am. St. Rep. 151, 81 Pac. 652].)

The order denying a new trial is affirmed.

Angellotti, J., Shaw, J., Lorigan, J., McFarland, J., and Henshaw, J., concurred.