[Crim. No. 476. First Appellate District.—December 21, 1914.]

THE PEOPLE, Respondent, v. ARTHUR F. MacPHEE et al., Appellants.

CRIMINAL LAW — CONSPIRACY — PROTECTION OF BUNKOMEN BY POLICE OFFICERS — SUFFICIENCY OF INDICTMENT — SECTIONS 68 AND 182 PENAL CODE.—An indictment charging police officers with having entered into a conspiracy with certain bunkomen by which the latter were to be given leeway for the perpetration of various frauds and crimes in consideration of the payment to the officers of a share of the ill-gotten gains as the reward of their lack of molestation, is not subject to the objection that it charges the defendants with two crimes, viz., a conspiracy under section 182 of the Penal Code and the offense of receiving bribes under section 68 of the Penal Code.

ID.—CONSTRUCTION OF SECTION 182 PENAL CODE—CONSPIRACY CHARGE NOT DEFEATED BY CONSUMMATION OF OTHER CRIMES.—The language of section 182 of the Penal Code is inclusive and elastic enough to permit the framing of an indictment charging a conspiracy to do or permit the doing of any or all of the illegal acts referred to therein; and the fact that the parties to the conspiracy succeeded in perpetrating the acts of crime or fraud specified in the section, which thus became crimes under those other sections of the code forbidding these specific offenses, would not in any wise relieve the conspirators from their liability under section 182 of the Penal Code. To hold otherwise would be to practically nullify that section by making success in the consummation of its enumerated acts of fraud and crime a defense to the conspiracy by which that success was made possible.

ID.—INSTRUCTIONS—SUFFICIENCY OF.—It is held in this prosecution for conspiracy that the court did not err in refusing to give certain instructions requested by the defendant, the substance of the instructions having been given in other instructions of the court.

ID.—INSTRUCTIONS—DEFENDANT NOT ENTITLED TO OWN PHRASEOLOGY.— The defendant in any given case is not entitled, under the section of the code which permits the submission to the court of a defendant's requested instructions, to have his own particular phrasing of the law adopted by the court and given to the jury. All that he is entitled to is to have the substance of the law applicable to his case set forth by the court correctly in its instructions.

ID.—LIABILITY OF CONSPIRATOR FOR PREVIOUS ACTS OF CO-CONSPIRATOR— PROOF OF CONSPIRACY FIRST ESSENTIAL.—In a case of conspiracy, after the foundation has first been laid by proof tending to establish the fact of the conspiracy, every act and declaration of each member of the confederacy in pursuance of the original concerted plan and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each of them; and it makes no difference at what time any one of the persons charged entered into the conspiracy, for every one who does enter into such a common purpose and design is deemed in law a party to every act which had before been done by the others, as well as a party to every act which may afterward be done by any of the others in furtherance of such common design; but before the acts or declarations of one or more of the conspirators done or made at a time prior to the entering into the conspiracy by the particular person charged, can be used in evidence against him, the fact of the existence of the conspiracy at the time such acts were done or declarations made must have been shown by some degree of proof sufficient to justify the court in admitting the evidence of such prior acts or declarations; and such proof cannot consist merely in the acts and declarations of the alleged co-conspirators, but must be in the nature of an independent showing as to the existence of the conspiracy at the very time when the acts were done or declarations made by which the persons alleged to have subsequently joined the conspiracy are sought to be bound.

ID.—EVIDENCE—ACTS OF CONSPIRATORS PRIOR TO DEFENDANTS' ENTERING CONSPIRACY—PREJUDICIAL ERROR.—In such a case, where there was no evidence, either direct or circumstantial, outside of the statements of the co-conspirators themselves, tending in any degree to establish the existence of the conspiracy during the years 1910 and 1911 to which the defendants are alleged to have allied themselves in January, 1912, nor any evidence of any kind which tended in any degree to establish the commission of the offenses during those previous years to which the admitted conspirators themselves testified, it was prejudicial error for the court to allow evidence as against the defendants, of a number of acts of fraud and crime

perpetrated by the bunkomen and incriminating talks and transactions indulged in by policemen included in the conspiracy, during those years prior to the entering of the defendants into the conspiracy.

ID.—INSTRUCTIONS—LIABILITY OF PERSON COMING INTO CONSPIRACY.—It was also error in such a case, in the absence of proof *aliunde* tending to establish the existence of the conspiracy, during the years prior to the entry by the defendants, for the court to instruct the jury that, "A person coming into a conspiracy after its formation is deemed in law a party to all acts done or declarations made by any of the other alleged conspirators either before or afterward in furtherance of the common design."

ID.—SECTION 4½, ARTICLE VI OF CONSTITUTION.—In such a case, where it appears that the erroneous admission of evidence and the erroneous charge to the jury in regard to the acts of the co-conspirators prior to the time of the entry in the conspiracy of the defendants, were substantial and highly prejudicial to the defendants' case, and it cannot be determined on appeal whether the defendants would or would not have been convicted by a jury had the erroneously admitted testimony been withdrawn from their consideration, section 4½ of article VI of the constitution cannot be given application to uphold the judgment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

A. L. O'Grady, Thomas V. Eddy, and Nathan C. Coghlan, for Appellants.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from the judgment of conviction of the defendants upon the charge of having violated the provisions of section 182 of the Penal Code relating to conspiracy, and from an order denying a new trial.

The defendants herein, together with a number of other persons, members of the police force of San Francisco, were accused by an indictment of the grand jury of having entered into a conspiracy with one Mike Gallo, and a number of other persons, alleged to have been buncomen, by which the latter were to be given leeway for the perpetration of various frauds

and crimes, out of which the police officers involved in the conspiracy were to receive a share of the ill-gotten gains as the reward of their lack of molestation. The two defendants herein demanded that they be tried separately from the rest of the alleged conspirators, and they were accordingly so tried; and, having been convicted, are now prosecuting this appeal.

It is the first contention of the appellants that the indictment is defective in the fact that it charges the defendants with two crimes, viz., a conspiracy under section 182 of the Penal Code, and also the offense of receiving bribes under section 68 of the Penal Code. We cannot agree with this contention. The indictment is sufficient to charge the offense of a conspiracy to commit or connive at the commission of the several kinds of offenses enumerated in section 182 of the Penal Code; the language of that section is inclusive and elastic enough to permit the framing of an indictment charging a conspiracy to do or permit the doing of any or all of the illegal acts referred to therein; and the fact that the parties to the conspiracy succeeded in perpetrating the acts of crime or fraud specified in the section, which thus became crimes under those other sections of the code forbidding these specific offenses, would not in any wise relieve the conspirators from their liability under section 182 of the Penal Code. To hold otherwise would be to practically nullify that section by making success in the consummation of its enumerated acts of fraud and crime a defense to the conspiracy by which that success was made possible.

Appellants also find fault with the action of the court in refusing to give a number of instructions requested by the defendants. It is unnecessary for us to review these several refused instructions in detail, for the reason that after a careful consideration of the entire body of the court's instructions which were given to the jury, we are satisfied that the substance of the several instructions requested by the defendants and refused by the court is to be found in the instructions which the court gave. The defendant in any given case is not entitled, under the section of the code which permits the submission to the court of the defendant's requested instructions, to have his own particular phrasing of the law adopted by the court and given to the jury. All that he is entitled to is to have the substance of the law applicable to

his case set forth by the court correctly in its instructions; and this we think was done in this case and in respect of the particular matters at which the present objection to the action of the court is aimed.

The appellants further contend that the court committed numerous errors in the admission of certain testimony going to show that upon specific occasions prior to the time when the defendants are claimed to have entered into this alleged conspiracy, or to have had any knowledge of its existence, between the designated buncomen and their co-defendants, other specific crimes had been committed by one or other of the buncomen with whom these defendants are charged with having afterward conspired with a view to the commission by the former of later and similar offenses; and in this same connection it is further contended by the appellants that the court erred in its instruction to the jury that "A person coming into a conspiracy after its formation is deemed in law a party to all acts done or declarations made by any of the other alleged conspirators either before or afterward in furtherance of the common design." The particular facts to the admission of which in evidence objection was made and respecting which the foregoing instruction was given, are these: The evidence offered by the prosecution showed that the defendants were first assigned to the bunco and pickpocket detail by their superior officers in charge of the police department on January 29, 1912, and there is no evidence of any knowledge of or connection with the alleged conspiracy on their part prior to that date. One of the main witnesses for the prosecution was Mike Gallo, a buncoman, and one of the alleged co-conspirators whose acts of crime and fraud were to be winked at by the police. Gallo was asked by the prosecution to testify to specific acts of swindling and crime committed by him prior to the time of the first connection of the defendants with the alleged conspiracy; as, for instance, to the swindling of one Bonacosi on April 23, 1911; of one Pennelli on June 19, 1911; and of one Nadotti on November 29, 1911. Several other buncomen were also called to testify to a number of other specific acts of fraud and crime committed by them during the years 1910 and 1911. The prosecution also, by these several witnesses, sought to introduce evidence of conversations had from time to time during a period prior to January, 1912, and dating as far back as the year 1910,

between these several witnesses and members of the police
force other than the defendants, who were asserted during
this period to have been co-conspirators with these witnesses.
To the testimony of each of these witnesses, and to the ad-
mission of each detail of the foregoing evidence, the defend-
ants introduced the specific objection that as to them the mat-
ters sought to be elicited were incompetent, irrelevant, imma-
terial, hearsay, and not binding upon these defendants, for
the reason that these alleged acts were committed and conver-
sations held without the presence or knowledge of the defend-
ants and before the time of their alleged entrance into the
conspiracy in question, and that no foundation had been laid
for the admission of such evidence by proof *aliunde* of the
existence of the conspiracy at the time these several acts were
done and declarations made.   The justification of the prose-
cution for the offer and of the court for the admission of this
line of proof is to be found in that portion of the transcript
from which it appears that after the people had presented
some evidence tending to show that the connection of the de-
fendants with the conspiracy began in January, 1912, the dis-
trict attorney stated to the court that he proposed to go back
to 1910, and trace the conspiracy down from that time, show-
ing its then existence and the members who then were enlisted
in it; and that he proposed to show that the same body of
conspirators were in it before 1912 when the defendants
joined themselves to it; that the same class of crimes were
being committed and were being protected in the same way
by the police officers who were indicted with these defendants,
and that they were receiving the same percentages as their
profits from the nefarious scheme.   The court in passing
upon the admissibility of this proposed line of evidence, said:
"It is proper, when an individual is shown to have become
a member of the conspiracy after the conspiracy was formed,
to prove the acts and declarations of the conspirators prior
to that time upon the doctrine of adoption; that is to say,
when the latter member becomes identified with the conspiracy,
by such connection he thereby assumes responsibility for all
that has been done up to that time."   Acting upon this ruling
the court admitted, over the specific and repeated objections
of the defendant, all of the foregoing line of testimony, and
later in its charge to the jury gave the above quoted instruc-
tion.

It is a well-established principle of evidence in cases of conspiracy that *after* the foundation has first been laid by proof tending to establish the fact of the conspiracy, every act and declaration of each member of the confederacy in pursuance of the original concerted plan and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each of them; and it makes no difference at what time any one of the persons charged entered into the conspiracy, for everyone who does enter into such a common purpose and design is deemed in law a party to every act which had before been done by the others, as well as a party to every act which may afterward be done by any of the others in furtherance of such common design. (1 Greenleaf on Evidence, 16th ed., p. 305, and cases cited; 2 Wharton on Criminal Law, 10th ed., sec. 1399; Id., p. 1434, and cases cited.) The statement of the foregoing principle of law, however, presupposes that before the acts or declarations of one or more of the co-conspirators done or made at a time prior to the entering into the conspiracy by the particular person charged, can be used in evidence against him, the fact of the existence of the conspiracy at the time such acts were done or declarations made must have been shown by some degree of proof sufficient to justify the court in admitting the evidence of such prior acts or declarations; and that such proof cannot consist merely in the acts and declarations of the alleged co-conspirators, but must be in the nature of an independent showing as to the existence of the conspiracy at the very time when the acts were done or declarations made by which the persons alleged to have subsequently joined the conspiracy are sought to be bound.

That this is an equally well-settled principle of law relating to the proof essential in conspiracy cases, will be found fully supported in 2 Wharton on Criminal Evidence, 2d ed., p. 1430–2 and cases cited. Let us seek to apply this principle to the case in hand. The defendants McPhee and Taylor, according to the evidence and admissions of the prosecution, first joined the alleged conspiracy in January, 1912. It is claimed by the respondent that this conspiracy had then been in existence for a period of about two years, during which prior period a number of acts of fraud and crime had been perpetrated by the buncomen, and a number of incrimi-

nating talks and transactions been indulged in by the police-
men then included in the conspiracy. These acts, talks, and
transactions among the then alleged co-conspirators are offered
and admitted on behalf of the prosecution against these par-
ticular defendants upon the theory that, having entered into
a going conspiracy, they are bound by what had gone before.
It is indispensable, however, that before this evidence could
have been rightfully admitted some degree of proof *aliunde*
must have been presented tending to prove the existence of
the conspiracy among those then associated in it and whose
acts and declarations are sought to be so used. The record
in this case is voluminous, but a patient and careful examina-
tion of it fails to disclose any evidence whatever, either direct
or circumstantial, outside of the statements of the co-conspira-
tors themselves, tending in any degree to establish the exist-
ence of the conspiracy during the years 1910 and 1911 to
which the defendants are alleged to have allied themselves
in January, 1912. Not a single victim of any of the acts of
fraud and crime to which the buncomen Gallo, Cordino, and
others testify in detail as occurring during these former years,
is produced to support their story; nor is any evidence or
record of any kind presented which tends in any degree to
establish the commission of the offenses to which these ad-
mitted co-conspirators themselves testify with great particu-
larity. In the entire absence of such proof *aliunde* tending
to establish the existence of such conspiracy, during these
prior years, the action of the court in admitting in evidence
the acts and declarations of the alleged co-conspirators during
those years against these defendants must be held to be preju-
dicial error; and it therefore necessarily follows that the giv-
ing of the instruction of the court above quoted, which would
be correct in a proper case, but which is predicated upon the
admissibility and existence of such evidence in the pending
cause, must also be held to be error materially affecting the
defendants' case.

There are certain other assignments of error on the part of
the appellants, but as these chiefly refer to the rulings of the
court upon matters involved in the taking of the testimony
erroneously admitted as above set forth, they do not require
particular consideration.

The foregoing conclusions require a consideration of section
4½ of article VI of the constitution as to its application to

the case at bar. That the errors of the trial court above set forth were substantial and highly prejudicial to the defendants' case a brief reconsideration of the evidence will serve to demonstrate. The defendants are alleged to have become members of the conspiracy in question in the month of January, 1912. After that time there were four overt acts of the conspiring buncomen, largely if not chiefly supported by their own evidence, and in the knowledge, protection, and profits of which the defendants are claimed to have participated, but which participation each of the defendants under oath circumstantially denies. On the other hand, the reporter's transcript discloses that the court permitted a number of these same self-confessed buncomen to testify to at least twenty specific cases of swindling and larceny committed during the years 1910 and 1911, with much of circumstance and detail, and with numerous conversations with the policemen other than the defendants who were their alleged co-conspirators during this period, at which interviews percentages of division were agreed upon and a distribution had of ill-gotten gains. This mass of testimony, occupying several hundred pages of the transcript, was, as we have seen, erroneously admitted in evidence by the court. That its admission would have a highly prejudicial effect upon the minds and judgment of jurors there can be no doubt; and that its consideration, especially in view of the charge of the court, would contribute materially to their verdict we think to be a matter beyond dispute. After a most careful consideration of the entire cause including the evidence, but without the presence of the actual witnesses before us, we are unable to determine whether the defendants would or would not have been convicted by the jury had this erroneously admitted testimony been withdrawn from their consideration. This being so, we do not feel that section 4½ of article VI of the constitution can be given application to uphold the judgment in the case at bar. (*People* v. *O'Bryan,* 165 Cal. 55, [130 Pac. 1042]; *People* v. *Fleming,* 166 Cal. 357, [136 Pac. 291]; *People* v. *Wilson,* 23 Cal. App. 513, [138 Pac. 971].)

Judgment and order reversed, and the cause remanded for a new trial.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 19, 1915.

Lawlor, J., having been trial judge, did not participate.