[Crim. No. 2977. In Bank.—March 12, 1928.]

THE PEOPLE, etc., Appellant and Respondent, v. GEORGE FERLIN, Respondent and Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Appellant.

Homer C. Mills for Respondent.

LANGDON, J. — The defendant, George Ferlin, was charged in an information filed in the county of Los Angeles with the crimes of arson, murder, and the destruction of insured property. After trial the jury returned verdicts finding him guilty as charged in each of the three counts of the information. The verdict finding the defendant guilty of murder carried with it a recommendation that he be imprisoned in the state prison for life. This latter verdict was returned notwithstanding the fact that the trial court had theretofore advised the jury, as provided in section 1118 of the Penal Code, to acquit the defendant on the charge of murder. A motion for new trial was thereafter addressed by the defendant to each count of the information. The motion was denied as to counts one and three and granted as to count two, the latter count charging the defendant with murder. Judgments were accordingly entered by the trial court directing that the defendant be incarcerated in the state prison for a period of twenty-five years for arson and ten years for burning insured property. In the latter judgment it was indicated that the two sentences were to run concurrently.

The defendant has appealed from each of said judgments and from the order denying his motion for a new trial on each of the charges contained in counts one and three of the information. There is also presented herein an appeal on behalf of the People from the order of the lower court granting the defendant's motion for a new trial on the murder charge, and from that part of the judgment entered upon the verdict finding the defendant guilty of burning insured property, which directs that the sentence thereunder run concurrently with the sentence entered upon the verdict finding the defendant guilty of arson. A synoptical statement of some of the evidence adduced upon the trial will

materially assist in a proper understanding of the innumerable assignments of error upon which the respective appeals are founded.

Doctors F. R. Webb and D. E. Stewart testified substantially that they had examined the deceased, Walter Skala, a boy about twenty-one years of age, and found that his death had resulted from burns of the third degree, which were described as burns actually destroying the tissue on the surface of the body.

Carl W. Pirl testified that during the month of August, 1925, he had operated a gasoline service station in the county of Los Angeles; that on August 3, 1925, the defendant purchased of him twenty-six gallons of low-grade gasoline; that six gallons of said quantity were placed in the gasoline tank attached to the defendant's automobile and that the remaining twenty gallons were transported by the defendant in four five-gallon cans; that prior to the date of said purchase the defendant had never taken gasoline away in five-gallon containers; that on the day preceding the purchase of this gasoline the defendant had indicated to him that he would require a large quantity of gasoline with which to wash some old motors and suggested to the witness that ''if anybody should ask me how much gasoline he bought I wasn't to tell them anything''; that this admonition was apparently prompted by the fact that defendant said that other vendors of gasoline wanted his business; that he recognized a can shown him, by the faucet or spigot at the bottom, as one of the cans employed by the defendant to carry away a portion of the twenty gallons of gasoline purchased.

Fred W. Brown testified that he had a five-year lease from the defendant on a grocery-store and butcher-shop located at 1681 East Manchester Street, in the town of Graham, Los Angeles County; that his lease would not expire for approximately two and one-half years; that on the day preceding the fire, which occurred about 3 or 4 o'clock on the morning of August 4, 1925, he had placed on a shelf in his storeroom certain aprons and rags recently returned from the laundry; that after the fire he found these materials on the floor saturated with either gasoline or oil; that he also found four five-gallon cans in his storeroom subsequent to the fire, and that two of said cans contained some gasoline; that he recognized a can shown

him with a faucet or spigot at the bottom thereof as one of the cans he had found in the storeroom; that the east wall of the building had been blown out and up against the railway posts; that on two separate occasions within four months preceding the fire the defendant had conversed with him concerning the witness' lease; that upon the first of these occasions the defendant said he thought he had a buyer for the premises, whereupon he offered the witness $2,300 for his lease; that the defendant upon the latter occasion offered him $1,000 for the lease; that on the day preceding the fire he noticed the defendant had removed certain electrical fixtures from his store, which adjoined the witness' store, to the lot or yard at the rear of the premises; that he had not seen the defendant cleaning any motors. On cross-examination the witness admitted he had stated to the defendant's wife subsequent to the fire that he would do whatever possible "to give the defendant forty years."

Chester Hill testified that he was twenty years of age; that he knew the defendant and the deceased; that on or about July 28, 1925, the defendant said to him that "he wished the building was burned down in front"; that the witness "in a joking way" stated that he would burn it down for $300, to which the defendant replied "Well, we will fix it up"; that he had a conversation with the defendant during the afternoon preceding the fire, at which time the defendant stated "he had the gasoline and that evening would be all right"; that the witness thereupon agreed to burn the building that evening; that he then went to see the deceased, whom he had previously informed of the conversation with the defendant, and the deceased said "I will be down this evening"; that he, the witness, had on other occasions told the deceased he did not intend to fire the building and that he was "through with it," whereupon the deceased said, "Let me have the job and I will do it"; that the deceased on several occasions had inquired as to the defendant's readiness; that on the evening of the fire the defendant told the witness the gasoline "was up on the front of the building"—that part of the building under lease to the witness Brown—and suggested that the storeroom to the rear of the butcher-shop be fired; that the defendant stated he wanted the property destroyed because "he had a chance to sell his property, but Mr. Brown kept holding out for

too much money for the lease"; that the defendant had also referred to the insurance on the premises. On cross-examination the witness stated that he never intended burning the property or having anything to do therewith; that the defendant had previously said, "I will get the gasoline and you throw it around and then light the match"; that he told deceased to make arrangements with the defendant; that during the progress of the fire he and another boy went to the defendant's residence and awakened him; that they then drove in the defendant's car to the scene of the conflagration; that as far as he knew the defendant was unaware of any of the conversations had with the deceased, and that the defendant had not authorized him to talk with or to employ the deceased for any purpose.

Floyd G. Austin testified that he drove the witness Hill to the deceased's place of employment on the day preceding the fire, and that said Hill went in to see the deceased.

Ralph Barnes testified that he was employed by the defendant as a plumber's helper; that he slept in the rear of the burned premises and was awakened by the explosion and someone knocking on his door; that he accompanied the witness Hill to the defendant's home to inform the defendant of the fire, and that, with the defendant and his wife, they returned to the scene of said fire.

Bronson Skala testified that he was a brother of the deceased; that the deceased awakened him about 3 o'clock on the morning of August 4, 1925, by his "hollering"; that he opened the door of his home and saw the deceased horribly burned; that "his hair was standing straight up and his shirt and his underwear was burned off to his waist, and his skin was laying over. It was burned"; that he secured a doctor and had the deceased removed to the White Memorial Hospital, where he died about half-past 2 o'clock in the afternoon; that a key shown to him was found in a pocket of the deceased's trousers. On cross-examination he stated that the deceased said "he got burned in the fire, and he saw two men run out of the place. He ran in . . . was an explosion. He got blew out into the street."

James R. Garrett testified that he operated a restaurant two doors from the witness Brown's store; that he heard an explosion and a scream; that he saw the defendant on the afternoon preceding the fire carrying what appeared to be

electrical fixtures from his store to a shed on the rear of the premises.

Ira L. Curtis and William H. Bond, conductor and motorman, respectively, testified substantially that their street-car passed the defendant's premises about 3 o'clock on the morning of August 4, 1925; that they saw a bareheaded man about six feet in height standing there, and that his hair was combed pompadour style and was streaked with gray; that the defendant's hair was more combed back and more gray when they saw him in the sheriff's office prior to the trial than it was at the time of the trial.

William Heldoorn testified that he was a captain in the fire department, and that he attended the fire of the defendant's premises and noticed the odor of gasoline; that he saw some "big five-gallon cans" in the storeroom back of the butcher-shop.

P. C. Miller testified that he was district county firewarden; that he investigated the storeroom to the rear of the butcher-shop as soon as the fire had been sufficiently wet down to permit of entry and found five five-gallon cans therein, two of which contained some gasoline; that he also found gasoline-soaked rags and papers near the door leading from the storeroom to the butcher-shop; that he recognized a can shown him with a faucet or spigot on it as one of the cans he had seen in the storeroom.

G. L. Walker, county chemist, testified that he had examined the contents of a can shown him and found that it contained a low grade of gasoline.

R. E. Rankin, deputy sheriff, testified that a key shown to him had been given to him by the deceased's brother subsequent to the time of the fire, and that it opened a lock taken from the door leading to the defendant's electrical shop; that on the evening of August 4, 1925, in the sheriff's office, the defendant freely and voluntarily stated, in response to interrogatories, that he had purchased gasoline the preceding day and had carried it away in cans; that he had used it for cleaning old motors and in his business; that he knew the deceased and that the latter had worked for him at one time; that he had an opportunity to sell the destroyed premises for $20,000, but had unsuccessfully attempted to purchase the witness Brown's lease.

Two policies of insurance, covering the destroyed premises and aggregating $4,300, were introduced in evidence by the People.

The defense produced several witnesses who testified that the witness Hill's general reputation for truth, honesty, and integrity was bad. These witnesses also testified that they had seen the defendant use gasoline in his business for cleaning plumbing and electrical fixtures.

R. E. Williams testified that the defendant had authorized him in March, 1925, to sell the property for $15,000; that the defendant, at the time, said he could buy the witness Brown's lease in the event a sale was arranged; that he was unable to sell the property; that he thought it to be worth about $8,000.

Mrs. Deamie Ferlin, wife of the defendant, testified that he was forty-four years of age, and six feet four inches in height; that on the evening of August 3, 1925, the defendant took his family for an automobile ride, from which they returned home about 10:30; that the defendant slept in the dining-room that night with one of their sons; that she awakened the defendant between 3 and 3:30 o'clock in the morning, when the witnesses Hill and Barnes came to their home, and that the four of them drove to the scene of the fire; that the witness Brown told her not to testify in the defendant's favor, and that he had someone who would testify to having seen the defendant at or near the property on the morning of the fire; that the defendant had never combed his hair in a "pompadour" style and that it was the same color as at the time of the fire.

By stipulation of counsel the testimony of Dr. Stewart, given at the preliminary examination, was admitted on behalf of the defendant in lieu of recalling the witness. This testimony was to the effect that the deceased had stated to the witness that he was driving past the witness Brown's store when he saw the fire and two men running therefrom, whereupon he ran into the store and an explosion occurred which blew him into the street. Further outline of the evidence is unnecessary for our consideration of the appeals herein.

Arson is defined as "the wilful and malicious burning of a building, with intent to destroy it." (Sec. 447, Pen. Code.) To justify a conviction on a charge of arson it is

not necessary that a person other than the accused should have had ownership in the building fired; it is, sufficient that at the time of the burning another person was rightfully in possession of or was actually occupying such building, or any part thereof. (Sec. 452, Pen. Code.) The crime of burning insured property is defined and denounced in section 548 of the Penal Code, which declares in part: "Every person who wilfully burns . . . any property which at the time is insured against loss or damage by fire . . . with intent to defraud or prejudice the insurer, whether the same be the property or in the possession of such person or any other person, is punishable by imprisonment in the state prison for not less than one year and not more than ten years."

We find no merit in the defendant's contention that the evidence adduced upon the trial is insufficient to warrant his conviction upon counts one and three of the information. There was, in our opinion, ample testimony from which the jury might properly conclude that the defendant had, either individually or with the assistance of another, wilfully and maliciously ignited the property described in the information with the intent to destroy the same. Whether the conflagration resulted from the direct efforts of the defendant or was the outgrowth of the conduct of another acting for and on behalf of the defendant was a question of fact to be determined by the jury. On this appeal, however, the conclusion of the jury on that point is of little moment, for in either event the defendant is unquestionably guilty, as a principal, of the crime of arson. (*People* v. *Creeks*, 170 Cal. 368 [149 Pac. 821]; *People* v. *Raber*, 168 Cal. 316 [143 Pac. 317].)

Nor do we think the verdict finding the defendant guilty of burning insured property in violation of section 548 of the Penal Code is vulnerable to an objection going to the sufficiency of the evidence to sustain the same. When the evidence addressed to the arson count is considered with that showing the destroyed premises to have been heavily insured at the time of the fire, there can be no question as to the propriety of the verdict finding the defendant guilty as charged in the third count of the information.

In advance of considering the numerous particular assignments of error urged by the defendant, we will turn

our attention to the appeal of the People from the order granting to the defendant, upon motion therefor, a new trial on the charge of murder contained in the second count of the information. It is definitely settled that an appellate court will not disturb an order granting a new trial unless the record discloses a manifest abuse of the legal discretion which the trial court is required to exercise in the disposition of such a motion. (*People* v. *Canfield*, 173 Cal. 309, 312 [159 Pac. 1046]; *People* v. *Knutte*, 111 Cal. 453, 455 [44 Pac. 166]; *People* v. *Flood*, 102 Cal. 330, 332 [36 Pac. 663].) In the instant case the motion for new trial was based, in part, upon subdivision 6 of section 1181 of the Penal Code, which authorizes the court to grant a new trial when the verdict is contrary to law or evidence. It appears from the record herein that the court below granted the defendant's motion upon the ground that under no theory of the evidence had the crime of murder been shown or established as against the defendant. Section 189 of the Penal Code provides in part that "All murder which is . . . committed in the perpetration or attempt to perpetrate arson . . . is murder of the first degree. . . . "

We turn to section 187 of the Penal Code for our definition of murder and find that murder is the unlawful killing of a human being with malice aforethought. It would not be seriously contended that one accidentally killing himself while engaged in the commission of a felony was guilty of murder. If the defendant herein is guilty of murder because of the accidental killing of his co-conspirator then it must follow that Skala was also guilty of murder, and if he had recovered from his burns that he would have been guilty of an attempt to commit murder.

In the case of *People* v. *Garippo*, 292 Ill. 293 [127 N. E. 75], four conspirators committed the crime of robbery, and while carrying out the conspiracy to commit the crime one of the conspirators was shot and the defendants—co-conspirators—were prosecuted upon the theory that the killing having taken place during the commission of the crime of robbery each conspirator was responsible for the death of his co-conspirator, although not participating therein. The trial court instructed the jury, in effect, that the killing was chargeable to the conspirators because it occurred during the carrying out of the conspiracy, but the appellate court said

"Without doubt, there was a common design among these men (defendants) to hold up the drunken man, but this design had nothing whatever to do with the shooting of Scalzitti, and from the evidence the conclusion cannot be reasonably drawn that the plaintiffs in error had a common design of shooting one of their own number as would have been necessary in order to charge them with the murder or manslaughter of Scalzitti."

It cannot be said from the record in the instant case that defendant and deceased had a common design that deceased should accidentally kill himself. Such an event was not in furtherance of the conspiracy, but entirely opposed to it.

Other cases in point are: *People* v. *Kauffman*, 152 Cal. 331 [92 Pac. 861]; *People* v. *Sobieskoda*, 235 N. Y. 411 [139 N. E. 558]; *Butler* v. *People*, 125 Ill. 641 [8 Am. St. Rep. 423, 1 L. R. A. 211, 18 N. E. 338]; *Commonwealth* v. *Moore*, 121 Ky. 97 [123 Am. St. Rep. 189, 2 L. R. A. (N. S.) 719, 88 S. W. 1085]; *State* v. *Oxendine et al.*, 187 N. C. 658 [122 S. E. 568]; *Commonwealth* v. *Campbell*, 7 Allen (Mass.), 541 [83 Am. Dec. 705].

The attorney-general meets the rule of the foregoing cases by contending that the dying declaration of Skala, introduced in evidence, would justify the jury in concluding that Skala was a stranger to the conspiracy, an innocent outsider, who accidentally met his death as a result of the conspiracy of the defendant and Hill, and that, under such a view of facts, the charge of murder was sustainable. This theory was not the theory of the case in the trial court, and the evidence in support of this view is so slight and so opposed to all the other evidence in the record that if the jury reached its verdict upon such a finding the discretion of the trial court was properly exercised in granting a new trial upon the ground that the verdict was against the great weight of the evidence.

It follows that the verdict of the jury finding the defendant guilty under the second count of the indictment was against law and against the evidence, and that the motion of the defendant for a new trial upon that count was properly granted.

We will now direct our attention to the numerous particular assignments of error urged by the defendant in

support of a reversal. Upon *voir dire* examination the defendant attempted to ascertain of each juror whether he was a member of or affiliated with a named secret organization. Objection was promptly made by the prosecution, which the court sustained. The defendant, thereupon, explained the purpose of this line of inquiry as being necessary to his intelligent exercise of peremptory challenges. It is now well settled in this state that a juror may not be examined on *voir dire* solely for the purpose of laying the foundation for the exercise of a peremptory challenge. (*People* v. *Edwards,* 163 Cal. 752, 754 [127 Pac. 58].) We find no error in the lower court's ruling.

Nor do we think that the trial court erred in admitting, over the objection by the defendant, a photograph of the deceased taken after his death. The picture was identified by the deceased's father and by two doctors, who testified that it correctly showed the extent, degree, and character of the burns which caused the death of the deceased. The case of *People* v. *Rogers,* 163 Cal. 476, 480 [126 Pac. 143], disposes of the defendant's contention.

We perceive no error in the court's ruling striking out the answer of the witness Brown to the effect that he had rebuilt on the property subsequent to the fire. It will be recalled that Brown was lessee under the defendant. The stricken testimony was attempted to be elicited, so the defendant asserts, to rebut the prosecution's claim that the premises were destroyed in order to effectively secure the removal of the lessee. We cannot appreciate the relevancy or materiality of this evidence tending to show reconstruction of the premises subsequent to the fire. The assignment is without merit.

It is next urged by the defendant that the trial court erred in admitting over his objection certain conversations which the witness Hill claimed to have had with the deceased. These conversations occurred in the absence of the defendant and, apparently, without his knowledge and concerned purported negotiations with the deceased for his burning of the defendant's premises. The defendant interposed a twofold objection to the introduction in evidence of these conversations, it being insisted that there had been no antecedent and independent proof tending to establish a conspiracy between the defendant and the witness Hill,

and that such evidence was not admissible for the purpose of establishing one. The testimony was also objected to as being hearsay. It is our opinion, as already indicated, that the jury, upon an examination of the entire evidence in the case, would be warranted in concluding that the plan for the felonious burning of the premises had originated in the mind of the defendant and had been carried out in concert with another. In the case of *People* v. *Matthew,* 68 Cal. App. 95, 107 [228 Pac. 417, 421], it is declared: "It unquestionably is the general rule that proof of the existence of the conspiracy ordinarily should precede proof of the acts or declarations of a co-conspirator made pending the conspiracy and in aid and furtherance of the common design. But the rule in this respect is not absolute and unyielding; and sometimes, for the sake of convenience, evidence of the acts and declarations of an alleged conspirator is admitted before sufficient proof of the conspiracy is given. Thus, where, as here, the facts from which the conspiracy is to be inferred are so intimately blended with other facts going to constitute the crime that it is difficult to separate them, it is not essential to the introduction of evidence of the acts and declarations of one of the conspirators that evidence should first be introduced to establish *prima facie,* in the opinion of the court, the fact of conspiracy. (*People* v. *Fehrenbach,* 102 Cal. 394 [36 Pac. 678] . . . *People* v. *Sing,* 42 Cal. App. 397 [183 Pac. 865]. . . . )" It was not error, therefore, to permit the introduction in evidence of the conversations here complained of in advance of proof by independent evidence of the conspiracy between the defendant and Hill. The order in which the evidence in a case may be admitted is a matter within the sound discretion of the trial court, and we see no abuse of such discretion. (*People* v. *Rodley,* 131 Cal. 240, 253 [63 Pac. 351] ; *People* v. *Fehrenbach, supra.*) Nor do we find any merit in the defendant's contention that the conversations between Hill and the deceased looking to the destruction of the premises were hearsay and therefore inadmissible. The rule is well established in this state that the acts and declarations of a conspirator, in furtherance of the common design, are binding upon and admissible in evidence against a co-conspirator. (*People* v. *Kauffman,* 152 Cal. 331, 334 [92 Pac. 861]; *People* v. *Lawrence,* 143 Cal. 148 [68 L. R. A. 193, 76 Pac. 893];

*People* v. *MacPhee*, 26 Cal. App. 218 [146 Pac. 522].) In view of this settled rule it may properly be said that the acts and declarations of the co-conspirator Hill, in furtherance of the felonious enterprise, were, in contemplation of law, the acts and declarations of the defendant. (*People* v. *Creeks, supra; People* v. *MacPhee, supra.*) That these conversations with the deceased were had without the defendant's knowledge does not suggest any variation in the above rule. The apparent purpose of the conversations was the acquisition of an agent through whom the felonious scheme might be consummated. But, aside from what has been said, we do not believe that the defendant was or could have been prejudicially affected by the introduction in evidence of these conversations, even if it be assumed that their admission constituted error upon the part of the trial court. The record discloses that the lower court instructed the jury, at the request of the defendant, to disregard the evidence of any conversations bewteen the witness Hill and the deceased, unless said conversations had taken place in the presence of the defendant. It will be presumed that the jury exercised its jurisdiction soundly and that they heeded the instructions of the court. (*People* v. *Durrant*, 116 Cal. 179, 207 [48 Pac. 75].)

We find no error in the several rulings of the court below sustaining objections to certain questions propounded by the defendant during the cross-examination of the witness Hill. The evidence sought to be elicited by the defendant was either irrelevant or not proper cross-examination.

The witness Evans, called by the prosecution, was permitted to testify, without objection by the defendant, that he had seen the deceased walking with the defendant's minor stepson on the morning preceding the fire. It is now urged that the admission of this evidence constituted error. In the absence of a seasonable objection in the court below the defendant should not now be permitted to assign as error the admission of this testimony. (*Wood* v. *Moulton*, 146 Cal. 317, 322 [80 Pac. 92].) It is true that the defendant on cross-examination of the witness moved to strike from the record *all* of the witness' testimony given on direct examination. This motion was properly denied and may not serve to relieve the defendant of his failure to seasonably object to the admission of the evidence complained of under

this assignment. It cannot be said that "all" of the witness' testimony on direct examination was incompetent, irrelevant, and immaterial, as urged in said motion.

We have examined in detail some fourteen additional assignments of error touching various other rulings of the lower court, and have concluded that an extended discussion thereof would unduly prolong this opinion. Our study of these several assignments of error has disclosed nothing approximating prejudicial error.

Complaint is made by the defendant that the lower court erred in refusing to charge the jury, as matter of law, that the witness Hill was an accomplice. It is urged that this question, in view of the evidence in the case, was not a proper one to be submitted to the jury for determination. We are of the opinion that the defendant's contention is meritorious, for the evidence in the case unquestionably points to Hill as an accomplice. Moreover, the conduct of the prosecuting officer throughout the trial strongly indicates that Hill was so regarded. The question as to whether or not the witness Hill was an accomplice, under the evidence, was not seriously disputed upon the trial of the cause. It was the duty of the trial court, therefore, to instruct the jury, as matter of law, that Hill was an accomplice of the defendant. (*People* v. *Coffey,* 161 Cal. 433, 436 [39 L. R. A. (N. S.) 704, 119 Pac. 901]; *People* v. *Howell,* 69 Cal. App. 239, 242 [230 Pac. 991].) However, this error cannot be said to have prejudicially affected the defendant. In *People* v. *McDermott,* 75 Cal. App. 718 [243 Pac. 485], it is declared that "the jury should have been instructed that Sova must be regarded as an accomplice. That question should not have been left to it to determine. However, it must be presumed that the jurors observed and applied the instructions given them. In other instructions the definition of an accomplice was correctly stated, as also was the rule that the defendant may not be convicted on the uncorroborated testimony of an accomplice, and that the corroborating evidence is not sufficient if it merely shows the commission of the crime and the circumstances thereof; and, further, that such corroborating evidence must tend to connect the defendant with the commission of the crime. Hence, it is inconceivable that the erroneous instruction given in any way prejudiced any right of the appellant."

Practically an identical situation is presented in the instant case, for the court below in several instructions correctly stated the definition of an accomplice and likewise informed the jury that the testimony of an accomplice must be corroborated and that the corroborating evidence must not only tend to show the commission of the offenses charged in the information, but must also tend to connect the defendant therewith.

The defendant's alibi instruction was properly refused, for it erroneously intimated that if the evidence addressed to the alibi gave rise to a reasonable doubt as to the defendant's presence at the scene of the crime when perpetrated then a reasonable doubt arose as to his guilt and he would be entitled to a verdict of acquittal. In our opinion, absolute proof of the defendant's absence from the scene of the crimes would not, under the circumstances of this case, necessarily preclude his conviction thereof. Citation of authority is unnecessary to support this proposition.

As a final contention the defendant urges that the court erred in refusing to instruct the jury to the effect that imprisonment in a state prison suspends all civil rights, including the right to prosecute and defend all civil actions for damages. The obvious purpose of this instruction was to cause the jury to consider the effect of a conviction upon the defendant's defense of a civil suit for damages theretofore instituted by the lessee Brown. We cannot perceive the pertinency of such civil litigation to the offenses charged in the information. The instruction had no bearing upon the issues raised herein and was, therefore, properly denied.

At the commencement of this opinion we stated that the trial court in its judgment under count three, charging the burning of insured property, directed that the sentence thereunder run concurrently with the sentence imposed under count one, charging arson. This direction is assigned as error by the People, it being their contention that these sentences must run consecutively. Section 669 of the Penal Code, at the time the judgment was pronounced, provided that ''When any person is convicted of two or more crimes before sentence has been pronounced upon him for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction must commence at the termination of the first term of imprisonment to which he shall

be adjudged, or at the termination of the second or other subsequent term of imprisonment, as the case may be." In the instant case the defendant was convicted of the offenses charged in counts one and three before sentence was "pronounced upon him for either." It necessarily follows, in view of the mandatory provisions of section 669 of the Penal Code, that the sentences under counts one and three must operate consecutively. We have held in *Ex parte Kirby,* 76 Cal. 514 [18 Pac. 655], that said code section "is a mandate to the warden who holds the prisoner in custody, and by it he is informed that the imprisonment on the second conviction must commence at the termination of the first term of imprisonment." The error of the court below is not, therefore, such as to vitiate or alter the effect of the judgment under count three. However, to avoid any uncertainty in this respect the judgment under count three of the information is amended by striking therefrom the sentence reading: "To run concurrently with sentence in case No. 25876, Count 1." The sentences under counts one and three will and must operate consecutively, even in the absence of a direction therein to that effect. (*Ex parte Kirby, supra.*)

In conclusion it may be said that the lower court also erred in sentencing the defendant to the state prison for twenty-five years for arson in the second degree, and ten years for the offense of burning insured property. These sentences were improper and without the authority of the trial court to pronounce. The Indeterminate Sentence Law (sec. 1168, Pen. Code) has divested the trial court of any discretion in fixing the exact term of imprisonment, and has vested such discretion in the board of prison directors within the limits prescribed by the Penal Code. (*People* v. *Gonzales,* 36 Cal. App. 782 [173 Pac. 407].) This error of the lower court does not, however, nullify the judgments entered under counts one and three. (*People* v. *Rossi,* 37 Cal. App. 778 [174 Pac. 916].) The judgments pronounced under said two counts are and each is hereby modified by striking therefrom that part thereof in which a definite period of imprisonment is provided. (*People* v. *Rossi, supra.*)

The judgments pronounced upon the verdicts finding the defendant guilty of arson in the second degree and of burn-

ing insured property are and each is hereby affirmed as modified herein. The order denying the defendant's motion for a new trial under counts one and three of the information is also affirmed. The order granting a new trial upon the charge of murder, contained in count two of the information, is affirmed.

Richards, J., Preston, J., Waste, C. J., Curtis, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.

All the Justices concurred.