Filed 4/30/20 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>THE NORTH RIVER<br>INSURANCE CO. et al.,<br><br>　　　Defendants and<br>Appellants. | B292411<br><br>(Los Angeles County<br>Super. Ct. Nos. BA342316-<br>03, SJ4309)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br><br>NO CHANGE IN<br>JUDGMENT |

THE COURT:

　　It is ordered that the opinion filed herein on April 9, 2020, be modified as follows:

　1.　On page 2, the sentence at the bottom of the page beginning with "On June 26, 2015," is modified to read as follows:

> On June 26, 2015, defendant appeared in custody and the trial court arraigned defendant and set bail at $100,000 "per [the county bail] schedule."

2. On page 3, the first sentence at the top of the page beginning with "On July 1, 2015," is modified to read as follows:

> On July 1, 2015, the trial court conducted a bail review hearing.

3. On page 3, at the top of the page, the sentence beginning with "Defendant requested the court" is modified to read as follows:

> Defendant requested the court "consider lowering bail" or release him on his own recognizance, but the trial court denied those requests.

4. On page 3, move the existing footnote 3 to the end of the sentence modified in point 1 above so that footnote 3 follows "per [the county bail] schedule."

5. On page 6, under section "**I. Untimeliness**" at the end of the sentence beginning with "Once six months have elapsed" the citation is modified to read as follows:

> (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 496; *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1023 [power to set aside void order is discretionary].)

6. On page 11, the first full paragraph beginning with "The surety responds" is modified to read as follows:

> The surety responds that the above cited wall of precedent is inapplicable because its challenge is focused on how a *Humphrey* violation affects the validity of the state's detention of a criminal

2

defendant and, consequently, a surety's power to constructively detain the defendant through re-arrest to assure his or her appearance in court.

7. On page 12, near the top of the page and before the first full sentence beginning with "The remaining cases are only marginally relevant" the string cite following the *In re Palmer* citation is modified to add an additional case citation as follows:

> *In re Palmer* (2019) 33 Cal.App.5th 1199, 1202, 1222-1223 [defendant sentenced to an unconstitutionally excessive sentence is entitled to release]; *Ex parte Silvia* (1899) 123 Cal. 293, 293-294 [trial court may not imprison contemnor for nonpayment of alimony when he could pay alimony only by liquidating his "homestead" in violation of the constitution].)

8. On page 13, under section "**III.  No *Humphrey* Violation**" the sentence beginning with "But *Humphrey* was not violated in this case" is modified to read as follows:

> But *Humphrey* was not violated in this case because defendant was able to post bond.

9. On page 13, following the sentence modified above in point 8, delete the following sentence:

> Instead, he posted bail and fled.

10. On page 13, following the last sentence at the end of section "**III.  No *Humphrey* Violation**" and before section "**IV. Denial as a Matter of Law**" add the following five new paragraphs:

3

For the first time in its petition for rehearing, the surety offers two brand new arguments as to how, in its view, *Humphrey* was violated and, in support of those arguments, asks us to take judicial notice of matters not previously included in the record on appeal. Procedurally, the surety's tactics are inappropriate. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092.) Were the rule otherwise, briefing on the merits would become nothing more than a dress rehearsal for a whole new round of argument and evidence on rehearing.

Substantively, the surety's newly minted arguments also lack merit.

The surety's first newly minted argument is that defendant's *Humphrey* rights were incurably violated because he was detained for five days between the day the trial court fixed the bail amount (June 26, 2015) and the day he posted bail in that amount (July 1, 2015). The implicit but necessary premise of this argument is that *Humphrey* is incurably violated if a trial court does not hold an ability-to-pay hearing at the same time it initially sets the bond amount. But *Humphrey* holds no such thing. Indeed, as *Humphrey* itself held, the failure to conduct an ability-to-pay hearing may be cured and that cure is a "new bail hearing." (*Humphrey*, *supra*, 19 Cal.App.5th at pp. 1014, 1048.) This remedy makes no sense if, as the surety suggests, the failure to conduct an ability-to-pay hearing simultaneously with the initial setting of the bond amount by itself

4

incurably invalidates the detention and thereby necessitates exoneration of the bond.

The surety's second newly minted argument is that defendant's *Humphrey* rights were violated because *his nephew* posted the bond premium in this case, such that we cannot infer from the posting of the bond that *defendant* had the ability to pay. This is consistent, the surety continues, with the "standard presumption" that bond premiums are paid by the defendant's family and friends, not by the defendant personally. To begin, there is no "standard presumption" that bond premiums are paid by a defendant's family and friends. The cases the surety cites in support of its "standard presumption" merely note that the "weight" or "brunt" of a statutorily invalid bond forfeiture often falls on such "family" and "friends." (*County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661, 666; *People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 381.) Further and more to the point, the implicit but necessary premise of the surety's argument is that the inquiry into ability-to-pay under *Humphrey* is confined solely to an examination of the criminal defendant's *personal* ability to pay without regard to what funds he or she can muster from others. But *Humphrey* holds no such thing.

To the extent that the surety is, on rehearing, asking us to invalidate a bond based on an *expansion* of *Humphrey*, it is making an argument different

than the one it made in its merits briefing—namely, that the defendant's detention was invalid under *Humphrey* itself.

11.  On page 14, the first sentence at the top of the page beginning with "And we have concluded" is modified to delete the word "his" prior to "posting of bail" and replace with the word "defendant's" as follows:

> And we have concluded, above, that the trial court's order did not run afoul of *Humphrey* because we may infer from defendant's posting of bail that he had the ability to do so.

Appellants' request for judicial notice is denied.

There is no change in the judgment.
Appellants' petition for rehearing is denied.

_____

CHAVEZ, Acting P.J.        BIGELOW, J.*        HOFFSTADT, J.

_____

* Presiding Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THE NORTH RIVER<br>INSURANCE CO. et al.,<br><br>    Defendants and<br>Appellants. | B292411<br><br>(Los Angeles County<br>Super. Ct. Nos. BA342316-<br>03, SJ4309) |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge. Affirmed.

Jefferson T. Stamp for Defendants and Appellants.

Mary C. Wickham, County Counsel, Adrian G. Gragas, Assistant County Counsel, and Jessica C. Rivas, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

A trial court held a bail review hearing for a criminal defendant that, in compliance with the law in effect at the time, set bail at the amount prescribed by the county bail schedule.

After the defendant obtained a bail bond but did not appear as ordered, the court forfeited the bond and, ultimately, entered summary judgment on the bond against the bond's surety. Nearly two years after that judgment was entered, the surety moved to set aside the summary judgment under Code of Civil Procedure section 473, subdivision (d)[1] on the ground that the trial court's failure to inquire into the defendant's ability to pay when setting bail—as mandated by the later-decided case of *In re Humphrey* (2018) 19 Cal.App.5th 1006 (*Humphrey*), review granted May 23, 2018, S247278—rendered the bond (and hence the summary judgment) "void." The trial court denied the motion to set aside. We affirm this ruling. The trial court acted within its discretion in denying relief. More to the point, the trial court would have abused its discretion had it awarded the relief the surety sought, and we publish to explain the many reasons why the surety's argument must be rejected as a matter of law.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Issuance, forfeiture and judgment on bond*

In June 2008, the People charged Sergio Musio Chavez Gonzalez[2] (defendant) in a felony complaint with the sale and transportation of more than a kilogram of drugs (Health & Saf. Code, § 11352, subd. (a)). The court issued an arrest warrant.

On June 26, 2015, defendant was arrested on that warrant.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Defendant was also referred to under the alias Fraklyn Rivera Torres during the proceedings.

2

On July 1, 2015, the trial court arraigned defendant and conducted a bail review hearing. Defendant requested the court "consider lowering bail" or release him on his own recognizance, but the trial court denied those requests and set bail at $100,000 "per [the county bail] schedule."[3] Later that day, Bad Boys Bail Bonds, an agent of The North River Insurance Company (collectively, the surety), issued a $100,000 bail bond, which included defendant's promise to appear for the next hearing on July 27, 2015.

Defendant did not appear on July 27, 2015.

The trial court ordered the bond forfeited in open court, and thereafter mailed a notice of forfeiture to the surety. After the surety was unable to return defendant to court within the statutory period as extended by the court, the trial court entered summary judgment on the bond and against the surety in the amount of $100,000 plus $370 in costs. Judgment was entered on August 10, 2016.

### B. *Humphrey*

On January 25, 2018, the First District of the Court of Appeal decided *Humphrey*, *supra*, 19 Cal.App.5th 1006. In that case, the court followed the county bail schedule and set bail at $600,000 (and, after a further hearing, at a reduced amount of $350,000) for a 63-year-old defendant who stole $5 in cash and a bottle of cologne from a neighbor in his apartment complex; the driving factor for the high bail amount was the defendant's

---

[3] This is the bail amount set forth in the 2015 Los Angeles County Felony Bail Schedule for a violation of Health and Safety Code section 11352, subdivision (a) involving more than a kilogram of drugs. We may take judicial notice of the schedule. (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 3, fn. 2 [so holding]; Evid. Code, §§ 459, 452, subd. (c).)

decades-old criminal history. (*Id.* at pp. 1016-1017, 1021.) It was undisputed that the defendant could not afford to post a bond in either amount and would, as a consequence, be detained. Drawing upon the thread of equal protection jurisprudence that precludes imprisonment of an indigent probationer for the failure to pay fines he has no ability to pay or, even with bona fide efforts, no ability to earn (*id.* at pp. 1026-1028, citing *Bearden v. Georgia* (1983) 461 U.S. 660) and the thread of substantive due process jurisprudence that requires a "compelling" government interest to justify pretrial detention (*id.* at pp. 1033-1035, citing *United States v. Salerno* (1987) 481 U.S. 739), *Humphrey* held that a court setting the amount of bail must "consider [a] defendant's ability to pay and refrain from setting an amount so beyond the defendant's means *as to result in detention*." (*Id.*, at p. 1037, italics added.) Thus, *Humphrey* concluded, "a court may not order pretrial detention unless it finds . . . [(1)] that the defendant has the financial ability but failed to pay the amount of bail the court finds reasonably necessary to ensure his or her appearance at future court proceedings; or [(2)] that the defendant is unable to pay that amount and no less restrictive conditions of release would be sufficient to reasonably assure such appearance; or [(3)] that no less restrictive nonfinancial conditions of release would be sufficient to protect the victim and the community." (*Id.*, at p. 1026.)

Our Supreme Court granted review of *Humphrey* on May 23, 2018. (*In re Humphrey*, No. S247278, 2018 Cal.LEXIS 4053.)

## II.    Procedural Background

In June 2018, the surety filed a motion to set aside the August 2016 summary judgment. Invoking section 473, subdivision (d), the surety argued that the summary judgment

4

was "void" because the trial court's "original [July 2015] order setting bail in the amount of $100,000 was unconstitutional" under *Humphrey* because the trial court had not inquired into defendant's ability to pay.

After considering the People's opposition and the surety's reply, the trial court issued an eight-page order denying the motion to set aside. The court listed five reasons for denying the motion, four of which are pertinent on appeal:[4] (1) the Supreme Court's grant of review renders *Humphrey* persuasive (rather than precedential) authority, (2) *Humphrey* should not apply retroactively to bail settings that occurred before it was decided, (3) the surety lacked standing to assert any violation of *defendant's* rights under *Humphrey*, and (4) any error in setting bail would not invalidate the bond or otherwise call for its exoneration.

The surety filed this timely appeal.

## DISCUSSION

The surety argues that the trial court erred in denying its motion to set aside a void judgment under section 473, subdivision (d). Specifically, the surety argues that the summary judgment is void because the trial court's failure to inquire into defendant's ability to pay, as required by *Humphrey*, deprived the court of the power to detain defendant and thus deprived the surety of the power to constructively detain him on bail, such that the surety lacked any power to re-arrest defendant and must therefore be excused from any obligation under the bond.

Under section 473, subdivision (d), a trial court "may . . . set aside any void judgment or order." (§ 473, subd. (d).) By

---

[4] The fifth reason was that one trial court cannot not sit in judgment of another trial court.

its plain terms, this provision grants a trial court the discretion to set aside a judgment or order, but only if that judgment or order is "void." (*Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822.) Voidness is a legal question we review de novo; the discretionary decision whether to set aside a void judgment or order is, as one would anticipate, reviewed solely for an abuse of that discretion. (*Ibid.*)

The trial court did not err in denying the surety's motion to set aside the summary judgment. To paraphrase (and thereby sully) the poet Elizabeth Barrett Browning, "How do [we reject thine argument]? Let [us] count the ways."

## I.    Untimeliness

First, the surety's motion is untimely. "Once six months have elapsed since the entry of a judgment [or order], 'a trial court may grant a motion to set aside [a] judgment [or order] as void only if the judgment [or order] is void on its face.' [Citation.]" (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 496.) "'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll'" "or [the] court record without consideration of extrinsic evidence." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441, quoting *Morgan v. Clapp* (1929) 207 Cal. 221, 224; *Pittman v. Beck Park Apartments, Ltd.* (2018) 20 Cal.App.5th 1009, 1021.)

The surety filed its motion to set aside the summary judgment as void more than 22 months after that judgment was entered. Further, that judgment is not "void on its face" because the alleged defect—that is, the trial court's failure to comply with the as-yet-undecided *Humphrey* decision by not considering the defendant's ability to pay when setting bail—is not apparent from

6

the judgment roll or the court record without considering extrinsic evidence such as the *Humphrey* decision and the transcript from the bail setting hearing.

## II. Voidness

Second, and even if we overlook the untimeliness of the surety's motion, the summary judgment is not void.

A judgment is "void" only when the court entering that judgment "lack[ed] jurisdiction in [a] fundamental sense" due to the "'entire absence of power to hear or determine the case'" resulting from the "'absence of authority over the subject matter or the parties.'" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*), quoting *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 287, 288 (*Abelleira*).) To be sure, a court that "''acts contrary to [its] authority'''" "'to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites'" is often said to lack "jurisdiction." (*American Contractors*, at pp. 660-661, quoting *Abelleira*, at pp. 288, 290.) But such acts do not render the court's ensuing judgment or order void. That is because "jurisdictional errors can be of two types[:] A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 (*Goddard*).) Only void judgments and orders may be set aside under section 473, subdivision (d); voidable judgments and orders may not. (E.g., *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 807; *Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 973.)

7

Applying these definitions, the trial court's summary judgment on the bond was not void. That is because the trial court at all times had fundamental jurisdiction over the subject matter and the parties. The court had the jurisdiction over the subject matter when it followed the statutory procedures then in effect when setting the bail amount for the defendant (Pen. Code, §§ 1268, 1275), releasing defendant on bail once the surety posted a bond in the bail amount (*id.*, §§ 1269, 1269a), declaring the bond forfeited in open court when defendant did not appear as ordered and had no sufficient excuse for his nonappearance (*id.*, § 1305, subd. (a)), and entering summary judgment once defendant was not returned to custody by the expiration of the appearance period (*id.*, § 1306, subd. (a)). (Cf. *People v. Amwest Surety Ins. Co.* (2004) 125 Cal.App.4th 547, 553 (*Amwest Surety*) [trial court loses subject matter jurisdiction over a bond and thus may not enter summary judgment if it "fail[s] to declare bail forfeited in open court"].) The court also had jurisdiction over the surety once the surety posted its bond. (Cf. *American Contractors*, *supra*, 33 Cal.4th at p. 663 [court does not lose personal jurisdiction over surety due to entry of summary judgment prior to expiration of appearance period].)

The trial court's failure to anticipate and adhere to *Humphrey* in setting the bail amount did not render void the summary judgment on the bond.

Any non-compliance with *Humphrey* would, at best, be an act "in excess of [the trial court's] jurisdiction." (*Goddard*, *supra*, 33 Cal.4th at p. 56.) *Humphrey* imposes a requirement that a trial court "consider [a] defendant's ability to pay" when setting bail. (*Humphrey*, *supra*, 19 Cal.App.5th at p. 1037.) Because a court that "'act[s] without the occurrence of certain procedural

8

prerequisites'" acts only in excess of its jurisdiction (but within its fundamental jurisdiction) (*American Contractors*, *supra*, 33 Cal.4th at p. 661), a trial court's failure to consider a defendant's ability to pay under *Humphrey* results in, at best, a bail order that is voidable, not void. That *Humphrey* rests on constitutional rather than statutory grounds does not affect the jurisdictional analysis and does not elevate an otherwise voidable order into a void order. (See *In re Reno* (2012) 55 Cal.4th 428, 478-481 [treating "lack[]" of "fundamental jurisdiction" as distinct from the commission of "constitutional error" when excusing procedural defaults in habeas corpus litigation].)

What is more, any non-compliance with *Humphrey* would, at best, render the bail order voidable *as to the defendant, not as to the surety*. Bail is a function of "two different contracts between three different parties"—namely, (1) a contract between a criminal defendant and a surety under which the surety posts a bail bond in exchange for the defendant's payment of a premium and his promise to pay the full amount of the bond in the event of his nonappearance, and (2) a contract between the surety and the People under which the surety "'"act[s] as a guarantor of the defendant's appearance in court under risk of forfeiture of the bond."'" [Citations.]" (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 377; *People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42; *American Contractors*, *supra*, 33 Cal.4th at p. 657.) If these two contracts form the two legs of this triangle of parties, the underlying criminal prosecution of the defendant by the People is the proverbial hypotenuse. Much as the three sides of a triangle are connected but still distinct, our Supreme Court has observed that "[w]hile bail bond proceedings occur in connection with criminal prosecutions, they are

9

independent from and collateral to [those] prosecutions . . . ." (*American Contractors*, at p. 657, citing *People v. Wilcox* (1960) 53 Cal.2d 651, 654.)

The independence of bail proceedings from the underlying criminal prosecution is why any non-compliance with *Humphrey* during the prosecution does not affect—let alone eviscerate—the trial court's jurisdiction over the collateral bail proceedings. Time and again, courts have ruled that errors in a trial court's setting of bail during the criminal prosecution do not let the surety off the hook in the collateral bail proceedings. In *People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 4, 6-8, the court held that the trial court's "failure to consider the statutory factors" in Penal Code section 1275 bearing on what amount of bail to fix did "not operate to exonerate [the] surety's liability" on the ensuing bond. In *People v. Financial Casualty & Surety* (2019) 39 Cal.App.5th 1213, 1216-1217, 1226-1227 (*Financial Casualty 2019*), the court held that a trial court's imposition of an unconstitutional bail condition (namely, that the defendant waive all of his Fourth Amendment rights while on bail) did not "void the bail agreement." And in *People v. Accredited Surety & Casualty Co., Inc.* (2019) 34 Cal.App.5th 891, 897-899 (*Accredited 2019*), the court held that a trial court's failure to conduct the inquiry into ability to pay mandated by *Humphrey* had "'no legal effect on the forfeiture of bail upon defendant's failure to appear' [citation]" and thus "did not render the subsequently issued bond void." Under this precedent, the surety's *Humphrey*-based argument in this case most certainly fails. Indeed, the limited effect of any non-compliance with *Humphrey* is confirmed by *Humphrey* itself, which specifies that the remedy for non-compliance is "a new bail hearing at which

10

. . . the court considers [the defendant's] financial resources" (*Humphrey*, *supra*, 19 Cal.App.5th at p. 1048)—not the defendant's immediate release or the invalidation of any and all subsequently issued bonds.

The surety responds that the above cited wall of precedent is inapplicable because its challenge is focused on how a *Humphrey* violation affects a surety's power to constructively detain a criminal defendant through re-arrest. But this focus, while novel, is substantively indistinguishable from the challenge rejected in *Accredited 2019* because the defect in a surety's power to constructively detain a criminal defendant that the surety focuses on in this case stems from the very same failure by the trial court to comply with *Humphrey* that was at issue in *Accredited 2019*. Because the failure is the same, its effect (or, more to the point, its non-effect) on the trial court's jurisdiction in the collateral bail proceedings is also the same, no matter which aspect of that effect a surety chooses to focus our attention.

The surety cites several cases in support of its position by stringing together out-of-context quotations from each case to support that position. Considering their holdings rather than their soundbites, however, most of these cases have no relevance whatsoever to the issue before us. (See *People v. McReynolds* (1894) 102 Cal. 308, 311-312 [surety released from liability on bond when defendant taken into custody by law enforcement]; *Hensley v. Municipal Court San Jose-Milpitas Judicial Dist.* (1973) 411 U.S. 345, 349 [person released on bail is in constructive custody]; *People v. Cossey* (1950) 97 Cal.App.2d 101, 114-115 [same]; *Rodman v. Superior Court of Nevada County* (1939) 13 Cal.2d 262, 267-271 [trial court exceeds its jurisdiction when refusing to exonerate a bond when surety surrenders

11

defendant]; *People v. Doe* (1959) 172 Cal.App.2d Supp. 812, 814-817 [same, when defendant is released on probation]; *Taylor v. Taintor* (1872) 83 U.S. 366, 371-372 [trial court not required to exonerate bond when another state exerts jurisdiction over defendant before surety surrenders him]; *Kiperman v. Klenshetyn* (2005) 133 Cal.App.4th 934, 939-940 [addressing when trial court may order a surety to return *the bond premium* to defendant]; *In re Palmer* (2019) 33 Cal.App.5th 1199, 1202, 1222-1223 [defendant sentenced to an unconstitutionally excessive sentence is entitled to release].)  The remaining cases are only marginally relevant and thus distinguishable.  The surety cites *People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588 (*International Fidelity*), which held that a surety was entitled to set aside a summary judgment on a bond as "void" where part of the consideration for the bond—in that case, the existence of a $35,000 bond issued by another surety that affected the surety's assessment of risk—was invalid.  (*Id.* at pp. 595-596.) *International Fidelity* deals with a defect in the contract between the People and the surety.  (See *Financial Casualty 2019*, *supra*, 39 Cal.App.5th at pp. 1226-1227 [similarly holding that any defect in bail setting as to criminal defendant "does not constitute a failure of any . . . consideration that the government gave to [s]urety for the bail agreement"].)  The same is true for *Amwest Surety*, *supra*, 125 Cal.App.4th at p. 550, which deals with defects with the trial court's forfeiture of the bond.  Because this case deals with alleged defects in the criminal proceedings involving the criminal defendant and the court, neither *International Fidelity*, *Amwest Surety* nor the maxim about construing such defects in favor of the surety (*International Fidelity*, at p. 595)

12

apply; they deal with defects in the trial court-surety leg of the triangle, not a defect in the hypotenuse proffered here.

## III. No *Humphrey* Violation

Third, and even if we overlook the untimeliness of the surety's motion and that any *Humphrey* error did not render the summary judgment void, there was no *Humphrey* error. As explained above, what *Humphrey* prohibits is the *detention* of a criminal defendant absent a consideration of his ability to pay. (*Humphrey*, *supra*, 19 Cal.App.5th at pp. 1026, 1037.) But *Humphrey* was not violated in this case because defendant was never detained. Instead, he posted bail and fled. On such facts, as our Supreme Court has noted, "the issues regarding the propriety of requiring bail as a condition of release raised in . . . *Humphrey* . . . are not presented." (*In re Webb* (2019) 7 Cal.5th 270, 274.) *Humphrey* was also not violated because defendant did not lack the ability to pay. Although the trial court did not specifically inquire into or make findings regarding defendant's ability to post bail, defendant *was* undeniably able to do so, and we may reasonably infer his ability to post bail from the fact that he did. (E.g., *Brown v. Superior Court* (1937) 72 P.2d 230, 231 [noting that a "court could . . . infer that the defendant, having agreed to pay, had the ability to pay"].)

## IV. Denial as a Matter of Law

Fourth and finally, the trial court would have been compelled as a matter of law to deny the surety's motion to set aside the summary judgment. The surety does not dispute that the trial court's bail setting was correct under the pre-*Humphrey* law in effect in July 2015; indeed, had the trial court at that time departed from the bail schedule based on the defendant's ability to pay (as contemplated by *Humphrey*), its order would have been

13

subject to reversal.  And we have concluded, above, that the trial court's order did not run afoul of *Humphrey* because defendant was never detained and because we may infer from his posting of bail that he had the ability to do so.  Consequently, the surety is asking us to vacate summary judgment on a bond—and to order the People to refund the amount of that bond—that arose from a bail setting that complied with the law at the time and that complies with *Humphrey*.

What is more, the logic of the surety's argument cannot be confined to this case:  It would apply with equal force to every bond ever forfeited in the State of California prior to *Humphrey*. Tellingly, the surety says nothing about whether the legions of sureties who would benefit from this colossal disgorgement would have to refund the premiums they collected on those bonds to the defendants from whom they collected them.  Thus, accepting the surety's argument would convert *Humphrey*—a decision that decried the "[m]oney bail" system as discriminatory and unconstitutional as applied to people who are detained due to the inability to afford bail (*Humphrey*, *supra*, 19 Cal.App.5th at p. 1029)—into a lottery ticket of staggering proportions to the bail bond industry (1) by requiring the People to disgorge every bond amount forfeited in cases involving defendants who, by definition, were not detained because they could afford bail, and (b) by allowing those sureties to retain the premiums they collected from those defendants.  Because granting such relief would be a perversion of *Humphrey* and would allow the sureties to have their cake and eat it too, it would be "irrational," "absurd" and a "repudiation of" the entire money bail system as well as *Humphrey* and hence an abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 377-378; *People v. Penoli* (1996) 46

Cal.App.4th 298, 304, 306 & fn. 6.)  We therefore conclude that a trial court would abuse its discretion if it grants the motion to set aside under these circumstances.

**DISPOSITION**

The order is affirmed.

**<u>CERTIFIED FOR PUBLICATION.</u>**


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
CHAVEZ


_____, J.
BIGELOW<sup>*</sup>

---

\* Presiding Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.