Filed 6/10/26  P. v. Miller CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> OLLIE M. MILLER, <br><br> Defendant and Appellant. | B346395 <br> (Los Angeles County <br> Super. Ct. No. BA109461) |

APPEAL from postconviction order of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, Roberta L. Davis, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Ollie M. Miller appeals from the denial of his Penal Code section 1172.6 petition.[1]  While recognizing his three attempted murder convictions were not based on the natural and probable consequences doctrine, defendant contends he is still eligible for resentencing under an uninstructed theory of imputed malice.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On the afternoon of February 15, 1997, defendant, codefendants Dion Mitchell and Reginald Carr, as well as Shaka Jones[3] and other members or associates of the Six-One and Six-Deuce Brims (collectively Sixties Brims) congregated outside a home on Menlo Street and 61st Street.  The Five-Nine Hoover gang, a rival Crips gang, claimed nearby territory.  Two occupants in a blue sedan drove by the group and flashed Hoover gang signs.  Defendant pulled a handgun and fired six shots at the car.

At a nearby residence several hours later, defendant, codefendants, and several others planned to "'shoot up all'" rival gang members from an alley running between Menlo and Hoover Streets.  Around 7:00 or 8:00 p.m., the men entered the alley

---

[1]  Subsequent unspecified references to statutes are to the current or earlier version of the Penal Code, or to the present identical but renumbered version.

[2]  We grant the Attorney General's request to take judicial notice of the appellate record in *People v. Miller et al.* (Feb. 25, 1999, B118099) [nonpub. opn.].

[3]  Jones was originally charged in this case.  In exchange for his truthful testimony, Jones received a five-year prison term for assault with a deadly weapon.

heavily armed. Defendant carried a nine-millimeter handgun, while others carried an AK-47 assault rifle, .380-caliber handgun, .357 magnum, and .25-caliber handgun. The men fired approximately 40 gunshots in the direction of what they believed were two individuals at the end of the alley.

Three children in the front yard of a residence on 61st and Hoover Streets were struck by the bullets. A two-year-old suffered gunshot wounds to her stomach, arm, and leg. Her 14-year-old brother suffered gunshot wounds to his legs and head. Their cousin also suffered a gunshot wound to his leg.

Following indictment and jury trial, defendant and codefendants were convicted of three counts of attempted murder (§§ 664/187, subd. (a); counts 1–3) and conspiracy to commit murder (§§ 182/187, subd. (a)) for the shooting occurring on February 15, 1997.[4] The jury found each attempted murder was committed willfully, deliberately, and with premeditation. (§ 664, subd. (a).) The jury also found that a principal and defendant personally used a firearm (§§ 12022, subd. (a)(1), 12022.5, subd. (a)(1), 1203.06, subd. (a)(1)) and found defendant personally and intentionally inflicted great bodily injury on two of the child victims. (§§ 12022.5, subd. (a)(1), 12022.7, subd. (a).) Defendant was sentenced to an overall term of 50 years plus three consecutive life terms.

A different panel of this court affirmed defendant's judgment. (*People v. Miller et al.* (Feb. 25, 1999, B118099)

---

[4]     Defendant was separately indicted for attempted murder in connection with the shooting at the blue sedan. He was acquitted of this offense and convicted of the lesser-included offense of assault with a deadly weapon with personal firearm use. (§§ 245, subd. (a)(2), 1203.06, subd. (a)(1), 12022.5, subd. (a)(1)).

3

[nonpub. opn.] 1, 16.)  In that direct appeal, defendant argued the trial court prejudicially erred by not instructing the jury on aiding and abetting under the natural and probable consequences doctrine, as this would have helped the jury determine whether particular trial witnesses were accomplices to the crimes.  (*Id.* at p. 7; see § 1111 [criminal conviction cannot be "had upon the testimony of an accomplice unless it be corroborated by such other evidence"].)[5]

In 2024, defendant filed a petition for writ of habeas corpus with a claim requesting section 1172.6 relief.  Treating this claim as a "stand alone, 1172.6 petition," the court appointed defendant counsel, received briefing, and held a prima facie hearing.  The court denied the petition, finding defendant's convictions not based on the natural and probable consequences doctrine.

## DISCUSSION

**A.    Governing Law**

Current section 1172.6 provides a resentencing procedure for persons convicted of murder, attempted murder, and manslaughter who could not be convicted under recently amended law.  (See *People v. Curiel* (2023) 15 Cal.5th 433, 440; Stats. 2021, ch. 551, §§ 1(a), 2.)  Specifically, section 1172.6 provides that persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on

---

[5]    While noting this theory "conceivably could have been" but was not raised by the parties at trial (*People v. Montoya* (1994) 7 Cal.4th 1027, 1050), the court reasoned it was also possible "all parties agreed *not* to instruct on the natural and probable consequences doctrine, . . ." (*People v. Miller et al.* (Feb. 25, 1999, B118099) [nonpub. opn.] 8, 9.)

4

that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition" to vacate such conviction(s) and be resentenced on any remaining count.  (§ 1172.6, subd. (a).)

This resentencing procedure begins with a petition declaring that (1) an indictment or complaint was filed allowing the prosecution to "proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) the petitioner was convicted of murder, attempted murder, or manslaughter; and (3) the petitioner could not presently be convicted of such offense under current law.  (§ 1172.6, subd. (a)(1)–(3).)

To proceed to an evidentiary hearing, the petitioner must establish a prima facie case for relief.  (§ 1172.6, subd. (c).)  This prima facie inquiry, though "limited" (*People v. Lewis* (2021) 11 Cal.5th 952, 971), is "more demanding than the inquiry into facial validity." (*People v. Patton* (2025) 17 Cal.5th 549, 566 (*Patton*).)  Conclusory allegations may be refuted by the record of conviction.  (*Id.* at p. 569.)  On appeal, we independently review this prima facie determination.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

## B.    Defendant Did Not Establish a Prima Facie Case

Defendant does not contend he was convicted of attempted murder under the natural and probable consequences doctrine. Nor does he dispute his convictions were based either on a perpetrator or direct aiding and abetting theory.  He contends,

5

however, that because the jury instructions did not expressly require his personal intent to kill each victim, the jury could have imputed malice to him.  We are not persuaded.

> 1. *Resentencing Eligibility is Limited to the Attempted Murder Under Natural and Probable Consequences Doctrine*

To begin with, defendant is ineligible for relief under the plain language of section 1172.6.  Similar to the recent approach taken by our Supreme Court when construing another provision in section 1172.6, "[w]e interpret the statutory language to mean just what it says" (*People v. Morris* (2026) 19 Cal.5th 671, 678 (*Morris*)):  Resentencing eligibility for an attempted murder conviction is limited to "the natural and probable consequences doctrine."  (§ 1172.6, subds. (a), (b).)

Section 1172.6 prescribes materially different conditions for resentencing eligibility for murder and attempted murder convictions.  Broad eligibility is prescribed for persons convicted of murder "under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which is malice is imputed . . . ."  (§ 1172.6, subd. (a), (a)(1).)  The eligibility conditions for attempted murder convictions are not so broad.  The only condition prescribed is "attempted murder under the natural and probable consequences doctrine."  (*Ibid.*)

The Legislature's use of the phrase "other theory under which malice is imputed" for murder and not attempted murder is significant in two respects.  First, it shows the Legislature "knows how to use the term . . . when that is the intent."  (*Morris, supra*, 19 Cal.5th at pp. 683–684.)  Second, it clarifies legislative

6

intent to differentiate eligibility conditions for different classes of convictions. (See *People v. Lopez* (2026) 19 Cal.5th 639, 669 (*Lopez*).) As this phrase is specifically employed in one class of conviction (murder) and is excluded in another (attempted murder), it "'"should not be implied where excluded."'" (*Id.* at p. 660.)

Under this plain construction, section 1172.6 says what it means: resentencing eligibility "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) As defendant admits in this appeal (and previously argued on direct appeal), his convictions for attempted murder are not based on the natural and probable consequences doctrine.[6] Thus, his petition was correctly denied. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

2.  *Defendant Was Convicted as a Direct Perpetrator or Direct Aider and Abettor*

Notwithstanding our conclusion above, the record conclusively establishes defendant's guilt under two currently valid theories of attempted murder—direct perpetrating and direct aiding and abetting.

---

[6]     We reject the suggestion that defendant's jury could employ a natural and probable consequences theory of liability without ever receiving instructions on it. The cases on which defendant relies prove this point. (E.g., *People v. Kauffman* (1907) 152 Cal. 331, 335–336 [first instance in which jury received natural and probable consequences instruction]; *People v. Prieto* (2003) 30 Cal.4th 226, 249–250 [CALJIC Nos. 6.11, 8.26]; *People v. Prettyman* (1996) 14 Cal.4th 248, 257–258 (*Prettyman*) [CALJIC No. 3.02].)

7

The first theory required defendant's own "specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623 (*Lee*).) As the jury's true firearm enhancement and great bodily injury findings demonstrate, defendant was convicted as a shooter—a direct perpetrator of attempted murder—thus finding his specific intent to kill. (See CALJIC Nos. 3.31 [requiring union or joint operation of act and "specific intent in the mind of the perpetrator"], 3.31.5 [same], 8.66 [requiring direct but ineffectual act done by perpetrator "towards killing another human being" while harboring "express malice aforethought, namely, a specific intent to kill"].) As a "would-be slayer" who fired on the victims, the jury found defendant committed "willful, deliberate, and premeditated attempted murder." (CALJIC No. 8.67.)

The second theory of guilt, holding defendant accountable as direct aider and abettor, required findings that he share the "'specific intent'" of the direct perpetrator, "that is to say, the person must 'know[ ] the full extent of the [direct] perpetrator's criminal purpose and [must] give[ ] aid or encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime.' (*People v. Beeman* [(1984)] 35 Cal.3d [547,] 560.)" (*Lee, supra*, 31 Cal.4th at p. 624.) "Thus, to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing— which means that the person guilty of attempted murder as an aider and abettor must intend to kill. [Citation.]" (*Ibid.*, citing

8

*People v. McCoy* (2001) 25 Cal.4th 1111, 1117–1118; see also *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)

The jury instructions conclusively establish these elements. To convict defendant under this theory (see CALJIC Nos. 1.11, 17.00),[7] the jury was required to find he aided and abetted attempted murder, the only "crime" to which aiding and abetting principles applied. Under the relevant instructions, the jury was required to find defendant aided, promoted, encouraged, or instigated each attempted murder with "knowledge of the unlawful purpose of the perpetrator,"[8] and "intent or purpose of committing or encouraging or facilitating the commission of the crime." (CALJIC No. 3.01.) In turn, CALJIC No. 8.66 defined attempted murder as (1) a direct but ineffectual act toward killing a human; and (2) the "person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

Construed together, these instructions required that the jury find defendant knew his co-shooters' criminal purpose to kill, *and* with the intent of committing, encouraging, or facilitating those attempted murders, aided, promoted, encouraged, or instigated them. "Thus, the jury necessarily found [defendant] had an intent to kill, the very definition of express malice." (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1191.)

---

[7]     CALJIC No. 1.11 informed the jury that the term "'defendant'" referred to all defendants on trial. CALJIC No. 17.00 required the jury adjudicate guilt of *each* defendant on each charged offense.

[8]     CALJIC No. 3.00 instructed the jury that "principals" to a crime included direct perpetrators—those who directly and actively commit the act constituting the crime—and those who aid and abet the commission of the crime.

### 3. *The Jury Could Not Have Imputed Malice From Isolated Instructions*

Defendant parses isolated phrases in jury instructions that, in his view, "invited" his conviction as an aider and abettor without finding he "*personally harbored* intent to kill." We disagree.

Defendant first targets CALJIC No. 3.00, which provided that each principal, regardless of the extent or manner of participation, is "equally guilty" of the same crime. Defendant argues the "equally guilty" language could be used as a means of imputing malice from the direct perpetrator(s). As discussed, this argument disregards clear instructions on the findings necessary for both classes of principals. Under those specific instructions, the jury could not have convicted defendant by imputing the "mental state of the actual [perpetrator], rather than on defendant's own mental state in aiding and abetting" the attempted killing. (*People v. Johnson* (2016) 62 Cal.4th 600, 641.)

Next, defendant argues CALJIC No. 3.01 confused the jury by setting forth elements of aiding and abetting an unspecified "crime." This instruction is not confusing. Defendant identifies no phantom, "uncharged crime, contrary to the trial court's instructions" to which an aiding and abetting theory could apply. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 206.) As discussed, attempted murder was the only crime to which the jury could apply aiding and abetting principles.

Finally, defendant argues that because CALJIC Nos. 8.66, 8.67, and 3.31.5 required a finding of intent to kill for "'the person committing the act'" and "'would-be slayer,'" the instructions did not require the aider and abettor *personally* harbor premeditation or an intent to kill. Again, we discern no

10

ambiguities in these instructions, which address the action(s) and mental state(s) of a different class of attempted murder principal—the direct perpetrator, not the aider and abettor.

4.    *The Jury Found Defendant Personally Intended to Kill*

Notwithstanding these arguments, defendant admits the jury made the very finding he avers is missing in this case:  his personal intent to kill.  Because this finding was tied to conspiracy to commit murder, however, defendant argues it is "irrelevant because the record of conviction does not link the conspiracy to the attempted murders."  Defendant suggests the jury could have convicted him of conspiring to murder some "other unnamed individuals" the same day he and the codefendants committed the shooting of the child victims.

Defendant ignores the court's ability to review "findings on factual issues *necessarily* found, looking to the entire record (i.e., the jury instructions provided, *applied to the evidence presented*, leading to particular jury findings)."  (*Lopez*, *supra*, 19 Cal.5th at p. 668, italics added.)  This "'issue-framing role'" is not impermissible judicial factfinding because the court is not "'resolving a contested factual dispute'"; it is looking to necessary facts underlying a conviction.  (*People v. Rodriguez* (2026) 117 Cal.App.5th 1179, 1193; see *Patton*, *supra*, 17 Cal.5th at p. 569.)

The record of conviction in this case provides the necessary "link" between conspiracy to commit murder and each attempted murder.  The indictment and jury instructions connected these offenses through the same victims, date, location, use of specific

11

weapons, and motive.[9]  (See e.g., *People v. Nguyen* (2024) 103 Cal.App.5th 668, 673–674, 678–679 [intent to kill established by conspiracy to commit murder over same retaliatory shooting as attempted murder count]; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 869 [similar approach applied for same victim].)

The parties' closing arguments also link the offenses.  The prosecution arued that defendant and codefendants conspired to commit murder and "intended to kill [rival] Hoover Crips.  They almost very nearly succeeded in killing [the children].  The only reason why they are being charged as an attempted murder and not murder is because the miraculous efforts of [medical personnel].  But for their heroic acts, they would be charged with murder now."  Defendant and codefendants acknowledged this theory but argued they were not involved.

Defendant identifies no part of the record from which the jury could convict him of conspiring to murder some "other unnamed individuals" unconnected to the attempted murder victims.  Such "'an invalid theory was [not] supported by the evidence' and 'argued by the parties.'" (*Lopez, supra,* 19 Cal.5th at p. 645; see also *Patton, supra,* 17 Cal.5th at p. 567 ["a hypothetical alternate [theory] cannot be conjured from thin air or a legal conclusion"]; *Prettyman, supra,* 14 Cal.4th at p. 267 [jurors may not "'indulge in unguided speculation'" without a factual basis].)  We therefore conclude that the resentencing court

_____

[9]     Consistent with the indictment, CALJIC No. 6.23 instructed the jury on the overt acts committed to further the object of the conspiracy, including:  meeting and planning to shoot rival Hoover Crip gang members with an AK-47 rifle and nine-millimeter handgun on February 15, 1997, the same date of the attempted murders; secreting themselves in an alley; and firing "into a group of people at a nearby home wounding *three children.*"  (Italics added.)

12

properly found defendant failed to establish a prima facie case for relief.

## DISPOSITION

The postconviction order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, P. J.


TAMZARIAN, J.